1 Michael P. Lehmann (77152; mplehmann@furth.com)
Thomas P. Dove (51921; tdove@furth.com)
2 Christopher L. Lebsock (184546; clebsock@furth.com)
Jon T. King (205073; king@furth.com)
3 FURTH LEHMANN & GRANT LLP
225 Bush Street, 15th Floor
4 San Francisco, CA 94104-4249
Telephone:   (415) 433-2070
5 Fax Number: (415) 982-2076

6 Francis O. Scarpulla (41059; fscarpulla@zelle.com)
Craig C. Corbitt (83251; ccorbitt@zelle.com)
7 ZELLE HOFMANN VOELBEL MASON & GETTE LLP
44 Montgomery Street, Suite 3400
8 San Francisco, CA 94104
Telephone: (415) 693-0700
9 Facsimile: (415) 693-0770

10 Attorneys for Plaintiff and the Putative Class

11 **UNITED STATES DISTRICT COURT**

12 **NORTHERN DISTRICT OF CALIFORNIA**

13 JUDD ELIASOPH, on behalf of himself and all )
others similarly situated,                    )  Case No.
14                                             )
                                              )
15            Plaintiff,                       )
                                              )
16       v.                                    )
                                              )  **CLASS ACTION COMPLAINT**
17 LG PHILIPS LCD CO., LTD.; LG PHILIPS LCD    )
AMERICA, INC.; SAMSUNG ELECTRONICS           )
CO. LTD.; SHARP CORPORATION; SHARP           )
18 ELECTRONICS CORPORATION; TOSHIBA           )  **JURY TRIAL DEMANDED**
CORPORATION; TOSHIBA MATSUSHITA              )
19 DISPLAY TECHNOLOGY CO., LTD.; HITACHI       )
LTD.; HITACHI DISPLAYS, LTD.; HITACHI        )
20 AMERICA LTD.; HITACHI ELECTRONIC           )
DEVICES (USA), INC.; SANYO EPSON             )
21 IMAGING DEVICES CORPORATION; NEC           )
CORPORATION; NEC LCD TECHNOLOGIES,           )
22 LTD.; NEC ELECTRONICS AMERICA, INC.;        )
IDT INTERNATIONAL LTD.; AU OPTRONICS;        )
23 INTERNATIONAL DISPLAY TECHNOLOGY            )
CO., LTD.; INTERNATIONAL DISPLAY             )
24 TECHNOLOGY USA INC.; AU OPTRONICS           )
CORPORATION AMERICA; CHI MEI                 )
25 OPTOELECTRONICS; CHI MEI                    )
OPTOELECTRONICS USA, INC.; CHUNGHWA          )
26 PICTURE TUBES LTD.; and HANNSTAR            )
DISPLAY CORPORATION                          )
27                                             )
             Defendants.                      )
28                                             )

75376.1

CLASS ACTION COMPLAINT

1          Plaintiff, by his attorneys, brings this civil action for damages and injunctive

2  relief on behalf of himself and all others similarly situated against the above-named

3  Defendants, and demanding a trial by jury, complain and allege as follows:

4                              **JURISDICTION AND VENUE**

5          1.      This complaint is filed under Section 16 of the Clayton Act

6  (15 U.S.C. §26) to obtain injunctive relief for violations of Section 1 of the Sherman Act

7  (15 U.S.C. §1), to recover damages under state antitrust and consumer protection laws, and

8  to recover the costs of suit, including reasonable attorneys' fees, for the injuries that

9  Plaintiff and all others similarly situated sustained as a result of the Defendants' violations

10 of those laws.

11         2.      The Court has jurisdiction over the federal claim under 28 U.S.C.

12 §§1331 and 1337.  The Court has jurisdiction over the state law claims under 28 U.S.C.

13 §1367 because those claims are so related to the federal claim that they form part of the

14 same case or controversy.  The Court also has jurisdiction over the state law claims under

15 28 U.S.C. §1332 because the amount in controversy for the Class exceeds $5,000,000, and

16 there are members of the Class who are citizens of a different state than the defendants.

17         3.      Venue is proper in this District under 15 U.S.C. §22 and 28 U.S.C.

18 §1391 because defendants reside, transact business, or are found within this District, and a

19 substantial part of the events giving rise to the claims arose in this District.

20         4.      The activities of the Defendants and their co-conspirators, as

21 described herein, were within the flow of, were intended to, and did have a substantial

22 effect on the foreign and interstate commerce of the United States.

23                                    **DEFINITIONS**

24         5.      As used herein, the term "TFT-LCD Products" means Thin Film

25 Transistor Liquid Crystal Display products, including such products as are used in

26 televisions, computer (both desktop and notebook) monitors, mobile phones, personal

27 digital assistants ("PDA's") and other devices.

28

CLASS ACTION COMPLAINT

6.     As used herein, the term "Class Period" means the time period

extending from at least January 1, 1998 through at least December 31, 2005.

### THE PARTIES

**The Plaintiff**

7.     Plaintiff Judd Eliasoph, a California resident, indirectly purchased

TFT-LCD Panels from one or more of the Defendants during the Class Period, for end use

and not for resale, and was injured as a result of Defendants' illegal conduct.

**The Defendants**

8.     Defendant LG Philips LCD Co., Ltd. ("LG Philips") is a Korean

entity with its principal place of business located at 20 Yoido-dong, Youngdungpo-gu, Seoul

150-721, Republic of Korea.  LG Philips is a joint venture created in 1999 by Philips

Electronics NV and LG LCD. LG Philips maintains offices within this District in San Jose,

California.  In its Form 6-K filed on December 11, 2006 with the United States Securities

and Exchange Commission ("SEC"), LG Philips stated that it "is a leading manufacturer

and supplier of thin-film transistor liquid crystal display (TFT-LCD) panels"; that it

"manufactures TFT-LCD panels in a wide range of sizes and specifications for use in TVs,

monitors, notebook PCs, and various applications"; that it "currently operates seven

fabrication facilities and four back-end assembly facilities in Korea, China and Poland."

(<http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200_j_e.jsp>).  During the

Class Period, LG Philips manufactured, sold and distributed TFT-LCD Products to

customers throughout the United States.

9.     Defendant LG Philips LCD America, Inc. is an entity organized

under the laws of California with its principal place of business located in this District at

150 East Brokaw Rd., San Jose, CA 95112.  During the Class Period, LG Philips LCD

America, Inc. manufactured, sold and distributed TFT-LCD Products to customers

throughout the United States.

10.     Defendant Samsung Electronics Co. Ltd. ("Samsung") is a business

entity organized under the laws of South Korea, with its principal place of business at

1    Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea.  During the Class

2    Period, Samsung manufactured, sold and distributed TFT-LCD Products to customers

3    throughout the United States.

4              11.    Defendant Sharp Corporation is a business entity organized under the

5    laws of Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka

6    545-8522, Japan.  During the Class Period, Sharp Corporation manufactured, sold and

7    distributed TFT-LCD Products to customers throughout the United States.

8              12.    Defendant Sharp Electronics Corporation is a wholly owned and

9    controlled subsidiary of Sharp Corporation, with its principal place of business at Sharp

10    Plaza, Mahwah, New Jersey, 07430.  During the Class Period, Sharp Electronics

11    Corporation manufactured, sold and distributed TFT-LCD Products to customers

12    throughout the United States.  Sharp Corporation and Sharp Electronics Corporation are

13    referred to collectively herein as "Sharp."

14              13.    Defendant Toshiba Corporation is a business entity organized under

15    the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku,

16    Tokyo 105-8001, Japan.  During the Class Period, Toshiba Corporation manufactured, sold

17    and distributed TFT-LCD Products to customers throughout the United States.

18              14.    Defendant Toshiba Matsushita Display Technology Co., Ltd. is a

19    business entity organized under the laws of Japan with its principal place of business located

20    at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan.  Defendant

21    Toshiba Corporation states on its website the following regarding Toshiba Matsushita

22    Technology Co., Ltd.:  "[a]dvanced capabilities in LCD and organic LED displays drive

23    product development and production and enhanced sales operations with a truly worldwide

24    reach. The company is the undisputed leader in low temperature polysilicon TFT

25    technology, the preferred display for mobile devices and the underpinning technology for

26    organic LED, the next generation display-of-choice for a range of products, including thin

27    profile televisions. These leading-edge capabilities support us in providing high value added

28    displays that are light and thin, consume little power and offer excellent image quality."

CLASS ACTION COMPLAINT

1   (<http://www.toshiba.co.jp/worldwide/about/company/tmd.htm>).  During the Class

2   Period, Toshiba Matsushita Display Technology Co., Ltd. manufactured, sold and

3   distributed TFT-LCD Products to customers throughout the United States.

4           15.     Toshiba Corporation and Toshiba Matsushita Display Technology

5   Co., Ltd. are referred to collectively herein  as "Toshiba."

6           16.     Defendant Hitachi Ltd. is a business entity organized under the laws

7   of Japan, with its principal place of business at 6-1 Marunouchi Center Building 13F

8   Chiyoda-ku,Tokyo,100-8220, Japan.  During the Class Period, Hitachi Ltd. manufactured,

9   sold and distributed TFT-LCD Products to customers throughout the United States.

10          17.     Defendant Hitachi Displays, Ltd. is a business entity organized under

11  the laws of Japan, with its principal place of business located at AKS Bldg. 5F, 6-2 Kanda

12  Neribei-cho 3,Chiyoda-ku,Tokyo,101-0022, Japan.   On its website, Hitachi Displays, Ltd.

13  states that "[w]e provide the world' s best products, quality and service to meet the needs of

14  the digital age. These include Hitachi' s proprietary Advanced-Super IPS LCDs offering

15  clear pictures from any angle; large-sized LCD modules for TVs using our original moving

16  picture technology; small-sized LCD modules for information terminal devices such as

17  cellular phones and digital cameras with low power consumption and high resolution picture

18  realized by LTPS (low-temperature poly-silicon) technology; and middle-sized colorful

19  LCD modules for amusement devices. We also produce components such as LCD drivers,

20  color filters and back-lights." (<http://www.hitachi-displays.com/en/company/ work/

21  index.html>).  During the Class Period, Hitachi Displays, Ltd. manufactured, sold and

22  distributed TFT-LCD Products to customers throughout the United States.

23          18.     Defendant Hitachi America Ltd. is a wholly owned and controlled

24  subsidiary of defendant Hitachi Ltd.  Hitachi America Ltd. is a business entity organized

25  under the laws of New York, with its principal place of business at 50 Prospect Avenue,

26  Tarrytown, New York, 10591.  During the Class Period, Hitachi America Ltd.

27  manufactured, sold and distributed TFT-LCD Products to customers throughout the United

28  States.

75376.1                                            -4-

CLASS ACTION COMPLAINT

1        19.    Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned

2   and controlled subsidiary of Defendant Hitachi Ltd., and is a business entity with its

3   principal place of business located at 575 Mauldin Road Greenville, South Carolina 29607.

4   During the Class Period, Hitachi Electronic Devices (USA), Inc. manufactured, sold and

5   distributed TFT-LCD Products to customers throughout the United States.

6        20.    Defendants Hitachi Ltd., Hitachi Displays, Ltd., Hitachi America

7   Ltd. and Hitachi Electronic Devices (USA), Inc. are referred to collectively herein as

8   "Hitachi."

9        21.    Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo

10  Epson") is a "a joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd.,

11  started operations on October 1, 2004. It combines the liquid crystal display operations of

12  Epson, Sanyo Electric, and Sanyo Group companies Tottori Sanyo Electric Co., Ltd. and

13  Sanyo LCD Engineering Co., Ltd. and mobilizes each company's special fields of

14  miniaturization, high resolution, high definition, and volume production technology."

15  (<http://www.sanyo-epson.com/e/company/outline/index.html>).   Defendant Sanyo

16  Epson's principal place of business is located at World Trade Center Building 15F, 2-4-1

17  Hamamatsu-cho, Minato-ku, Tokyo Japan.   During the Class Period, Sanyo Epson

18  manufactured, sold and distributed TFT-LCD Products to customers throughout the United

19  States.

20       22.    Defendant NEC Corporation is a business entity organized under the

21  laws of Japan with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku,

22  Tokyo 108-8001 Japan.   During the Class Period, NEC Corporation manufactured, sold and

23  distributed TFT-LCD Products to customers throughout the United States.

24       23.    Defendant NEC LCD Technologies, Ltd. is a wholly owned and

25  controlled subsidiary of Defendant NEC Corporation, and is an entity organized under the

26  laws of Japan with its principal place of business located at 1753 Shimonumabe, Nakahara-

27  Ku, Kawasaki, Kanagawa 211-8666, Japan.   During the Class Period, NEC LCD

28

1  Technologies, Ltd. manufactured, sold and distributed TFT-LCD Products to customers

2  throughout the United States.

3         24.    Defendant NEC Electronics America, Inc. ("NEC") is a wholly

4  owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of

5  business at 2880 Scott Boulevard, Santa Clara, California and its manufacturing plant in

6  Roseville, California. During the Class Period, NEC manufactured, sold and distributed

7  TFT-LCD Products to customers throughout the United States.

8         25.    Defendant IDT International Ltd. is an entity organized under the

9  laws of Bermuda with its principal place of business located at Block C, 9th Floor, Kaiser

10  Estate Phase 1, 41 Man Yue Street, Hunghom, Kowloon, Hong Kong. During the Class

11  Period, IDT International Ltd. manufactured, sold and distributed TFT-LCD Products to

12  customers throughout the United States.

13         26.    Defendant International Display Technology Co., Ltd. is an entity

14  organized under the laws of Japan with its principal place of business located at Nansei

15  Yaesu Bldg. 3F, 2-2-10 Yaesu, Chuo-Ku, Tokyo 104-0028, Japan. Defendant International

16  Display Technology Co., Ltd. is a subsidiary of Defendant Chi Mei Optoelectronics

17  Corporation. During the time period covered by this Complaint, Defendant International

18  Display Technology Co., Ltd. manufactured, sold, and distributed TFT-LCD Products to

19  customers throughout the United States.

20         27.    Defendant International Display Technology USA Inc. is corporation

21  with its principal place of business located at 101 Metro Drive Suite 510, San Jose,

22  California. Defendant International Display Technology USA Inc. is a subsidiary of

23  Defendant Chi Mei Optoelectronics Corporation. During the time period covered by this

24  Complaint, Defendant International Display Technology USA Inc. manufactured, sold, and

25  distributed TFT-LCD Products to customers throughout the United States.

26         28.    Defendant AU Optronics is Taiwan's largest manufacturer of TFT-

27  LCD Products and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science

28  Park, Hsinchu 30078, Taiwan, R.O.C. During the Class Period, AU Optronics.

1 manufactured, sold and distributed TFT-LCD Products to customers throughout the United

2 States.

3          29.     Defendant AU Optronics Corporation America ("AUOCA") is a

4 wholly owned and controlled subsidiary of defendant AU Optronics and has its corporate

5 headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas. AUOCA has a

6 facility located in San Diego, California, During the Class Period, AUOCA manufactured,

7 sold and distributed TFT-LCD Products to customers throughout the United States.

8          30.     Defendant Chi Mei Optoelectronics Corporation ("Chi Mei") is a

9 leading manufacturer of TFT-LCD Products and has its global headquarters at No. 3,

10 Sec. 1, Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County,

11 74147 Taiwan R.O.C. During the Class Period, Chi Mei manufactured, sold and distributed

12 TFT-LCD Products to customers throughout the United States.

13          31.     Defendant Chi Mei Optoelectronics USA, Inc. is a wholly owned and

14 controlled subsidiary of Chi Mei and has its corporate headquarters at 101 Metro Drive

15 Suite 510, San Jose, California. During the Class Period, Chi Mei Optoelectronics USA,

16 Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the

17 United States.

18          32.     Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa") is a leading

19 manufacturer of TFT-LCD Products and has its global headquarters at 1127 Hopin Rd.,

20 Padeh City, Taoyuan, Taiwan, R.O.C. During the Class Period, Chunghwa manufactured,

21 sold and distributed TFT-LCD Products to customers throughout the United States.

22          33.     Defendant HannStar Display Corporation ("HannStar") is a leading

23 manufacturer of TFT-LCD Products and has its headquarters at No. 480, Rueiguang Road,

24 12th Floor, Neihu Chiu, Taipei 114, Taiwan, R.O.C. During the Class Period, HannStar

25 manufactured, sold and distributed TFT-LCD Products to customers throughout the United

26 States.

27

28

**Co-Conspirators**

34.    Various others, presently unknown to Plaintiff, participated as co-conspirators with the Defendants in the violations of law alleged in this Complaint and have engaged in conduct and made statements in furtherance thereof.

35.    The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendant's business or affairs.

36.    Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this suit as a class action pursuant Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Plaintiff Class ("the Class") composed of and defined as follows:

> All persons and entities residing in the United States who, from January 1, 1998 through December 31, 2005, purchased TFT-LCD Products in the United States indirectly from the Defendants for their own use and not for resale.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

38.    This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.    The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

b.    Based upon the nature of the trade and commerce involved and the number of indirect purchasers of TFT-LCD Products, Plaintiff believes that the

CLASS ACTION COMPLAINT

1    members of the Class number in the thousands, and therefore is sufficiently

2    numerous that joinder of all Class members is not practicable;

3          c.    Plaintiff's claims are typical of the claims of the members of the Class

4    because Plaintiff indirectly purchased TFT-LCD Products from one or more of the

5    Defendants or their co-conspirators, and therefore Plaintiff's claims arise from the

6    same common course of conduct giving rise to the claims of the members of the

7    Class and the relief sought is common to the Class;

8          d.    The following common questions of law or fact, among others, exist

9    as to the members of the Class: whether Defendants formed and operated a

10   combination or conspiracy to fix, raise, maintain or stabilize the prices of, or

11   allocate the market for, TFT-LCD Products;

12         i.    whether the combination or conspiracy caused TFT-LCD Products

13             prices to be higher than they would have been in the absence of

14             Defendants' conduct;

15         ii.    the operative time period of Defendants' combination or conspiracy;

16         iii.    whether Defendants' conduct caused injury to the business or property

17             of Plaintiff and the members of the Class;

18         iv.    the appropriate measure of the amount of damages suffered by the

19             Class;

20         v.    whether Defendants' conduct violates Section 1 of the Sherman Act;

21         vi.    whether Defendants' conduct violates Sections 16720 and 17200 of

22             the California Business and Professions Code;

23         vii.    whether Defendants' conduct violates the antitrust, unfair competition,

24             and consumer protection laws of the other states as alleged below; and

25         viii.    the appropriate nature of class-wide equitable relief.

26         e.    These and other questions of law or fact which are common to the

27   members of the Class predominate over any questions affecting only individual

28   members of the Class;

f.      After determination of the predominate common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses;

g.      Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff has no interests that are antagonistic to other members of the Class and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent himself and the Class;

h.      A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged Class members is impractical.  The damages suffered by individual Class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation.  Thus, absent the availability of class action procedures, it would not be feasible for Class members to redress the wrongs done to them.  Even if the Class members could afford individual litigation, the court system could not.  Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system.  Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court;

i.      Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole; and

j.      In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

39.      The Claims in this case are also properly certifiable under the laws of the State of California, and of the other individual states identified below in the Fourth and Fifth Claims for Relief.

75376.1                                              -10-
CLASS ACTION COMPLAINT

1

## NATURE OF TRADE AND COMMERCE

2        40.     Throughout the Class Period, Defendants and their co-conspirators

3  engaged in the business of marketing and selling TFT-LCD Products throughout the United

4  States.

5        41.     As Defendant LG Philips states on its website, "the thin-film

6  transistor liquid crystal display ("TFT-LCD") is a cutting-edge display, which screens

7  picture information by adjusting the amount of light permitted."  (<http://www.lgphilips-

8  lcd.com/homeContain/jsp/eng/tech/tech210_j_e.jsp>).  LG Philips further states that "TFT

9  is a circuit formed with semiconductor films on a thin glass substrate to control liquid

10 crystals....  This circuit plays a vital role in controlling each pixel, the basic unit of a picture

11 image.  The color filter displays a color image by coating the pixel (red, green and blue) on

12 a glass substrate." *Id.*

13       42.     At the portion of its website entitled "How TFT-LCD Works"

14 Defendant LG Philips explains:

15            A pixel, the smallest unit to indicate a picture image, is formed by
             three sub-pixels consisting of red, green, and blue. The number of
16            pixels arranged in a display determines the resolution of the TFT-
             LCD. TFT is composed of the data line (image signal transfer) and
17            gate line (TFT on/off signal transfer).  TFT existing in each sub-pixel
             controls the voltage difference between the TFT glass electrode and
18            the color filter glass electrode in order to adjust the molecular array of
             liquid crystals. Such a change in the molecule direction of liquid
19            crystals alters the amount of light penetrating the liquid crystal layer.
             Consequently, the TFT-LCD display shows picture image
20            information.

21 (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_01_j_e.jsp>)

22       43.     The company describes some of the applications for TFT-LCD

23 technology as follows:

24            TFT-LCD technology has created a wide range of computer and
             consumer products that would have not been possible with cathode-
25            ray tubes (CRT). The flat and thin attributes of LCDs makes them
             ideal for mobile or portable applications. In addition, LCDs can
26            operate at low voltage levels and dissipate with low heat exposure.
             Initially, LCDs were incorporated into notebook computers, similar in
27            size and resolution to 12-14 inch CRT monitors. Through innovation,
             TFT-LCD engineers were able to develop displays providing much

28

CLASS ACTION COMPLAINT

1    higher resolution than CRTs, in addition to producing them in larger
     sizes.

2    Today, TFT-LCDs are challenging CRT-based desktop computer
3    monitors. As a result, a wider range of mobile computing applications
     are now available. Engineers have found ways to reduce weight,
     thickness, and the frame width of notebook computer displays. New
4    TFT process technologies make it possible to deliver more pixels per
     inch and allow even portable computers to display more information
5    than the latest CRT monitor. Such technology became available just as
     DVDs became popular, so consumers can now get DVD players in
6    very thin and light packages. Currently, a similar transformation is
     occurring with next-generation cell phones and wireless networks.

7

8    (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/ tech210_02_j_e.jsp>).

9        44.    The market for TFT-LCD Products is huge. An October 10, 2006

10   article stated that "[m]anufacturers are expected to pump out 48.4 million LCDs for TVs

11   this year alone, up 70 percent over 2005, while flat-panel sales – most of those using LCD

12   technology – are expected to reach $US 88 billion this year and $US 100 billion in 2007,

13   according to market research company DisplaySearch."

14   (<http://www.theage.com.au/news/home-theatre/they-are-building-it-but-will-lcd-sales-

15   come/2006/10/09/1160246068541.html#>).

16       45.    The market for the manufacture and sale of TFT-LCD Products is

17   also conducive to the type of collusive activity alleged here.  That market is oligopolistic in

18   nature. According to data from iSuppli, in 2005, LG Philips had 21.4% of the large TFT-

19   LCD panel global market share, Samsung had 20.9%, AU Optronics had 14.5%, Chi Mei

20   had 11.8%, and Chunghwa had 7.3%, while the remaining suppliers controlled 24.1%.

21   (<http://www.eetimes.com/showArticle.jhtml?articleID=177101936>). Samsung took

22   over the leading position in the industry in 2006. (<http://biz.yahoo.com/rb/061211/

23   lgphilips_investigation.html?.v=2 >).

24       46.    Some of these companies are known antitrust violators. Samsung, for

25   example, was fined $300 million by the United States Department of Justice ("DOJ") in

26   October of 2005 for participating in a conspiracy to fix prices for Dynamic Random Access

27   Memory. It is also under investigation by the DOJ (along with some of the other

28   Defendants) for fixing prices of Static Random Access Memory.

47.     The industry is also marked by a web of cross-licensing agreements that facilitate collusion. AU Optronics, for example, entered into licensing arrangements with sharp in 2005 and Samsung in 2006. Chi Mei has licensing arrangements with Sharp, AU Optronics, Chunghwa, HannStar and Hitachi.

48.     The market for the manufacture and sale of TFT-LCD Products is subject to high manufacturing and technological barriers to entry, some of which are described in Samsung's own November 3, 2005 "Market Perspective & Strategy" presentation available at its website. (<http://www.samsung.com/AboutSAMSUNG/ELECTRONICSGLOBAL/InvestorRelatio ns/IREventsPresentations/AnalystDay/index.htm >). Efficient fabrication plants are large and costly. TFT-LCD Products are also subject to technological advances, so that firms within the industry must undertake significant research and development expenses.

49.     The TFT-LCD Products industry has also been subject to significant consolidation during the Class Period, as reflected in AU Optronics' recent acquisition of Quanta Display, the creation in 2001 of AU Optronics itself through the merger of Acer Display and Unipac Optoelectronics, or Fujitsu Limited's transfer of its LCD business to Sharp in 2005.

50.     Defendants sell their TFT-LCD Products through various channels including to manufacturers of electronic products and devices, and to resellers of TFT-LCD Products. These electronic products and devices and TFT-LCD Products are then sold, directly or indirectly, to consumers and are not altered during the course of sale.

51.     California is the largest market in the world for TFT-LCD Products and is the worldwide center of the PC industry and other industries that depend upon the TFT-LCD Products market. Statements concerning the prices and market conditions for TFT-LCD Products were disseminated by Defendants from and into California on a regular and continuous basis.

1

## DEFENDANTS' ILLEGAL CONDUCT

2          52.     Defendants and their co-conspirators have engaged in a contract,

3 combination, trust or conspiracy, the effect of which was to raise the prices at which they

4 sold TFT-LCD Products to artificially inflated levels from at least January 1, 1998 through

5 at least December 31, 2005.

6          53.     Very recently, antitrust enforcement authorities in multiple countries

7 have begun investigating this unlawful cartel. On December 11, 2006, Defendant LG

8 Philips, in its Form 6-K filed with the SEC, stated the following:

9          Last Friday, as part of an investigation of possible anticompetitive
           conduct in the LCD industry, officials from the Korean Fair Trade
10         Commission (KFTC) visited the offices of LG.Phlips LCD in Seoul
           Korea.  In addition, the Japanese Fair Trade Commission (JFTC)
11         issued a notice to our offices, in Tokyo, Japan and then United States
           Department of Justice (DOJ) issued a subpoena to our offices in San
12         Jose, California.

13 (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200_j_e.jsp>).

14         54.     On December 11, 2006, the Reuters news agency reported the

15 following:

16         Samsung Electronics Co. Ltd. (005930.KS) is being investigated by
           fair trade watchdogs in South Korea, Japan and the United States, the
17         second Korean flat screen maker named in a probe into possible price-
           fixing, a news agency report said on Tuesday.
18
           The report, from South Korea's Yonhap news agency, follows a
19         disclosure by LG.Philips LCD Co. Ltd. (034220.KS) on Monday that
           it was the target of an investigation by the Korean Fair Trade
20         Commission (KFTC), the Japanese Fair Trade Commission (JFTC)
           and had received a subpoena from the U.S. Department of Justice ...
21
           Yonhap cited unnamed regulatory and industry sources in reporting
22         local antitrust authorities were also looking into possible collusion by
           Samsung and LG.Philips to fix the prices of LCD products and
23         control their supply ...

24         Late on Monday, a KFTC spokesman said the probe was being
           conducted by the Cartel Investigation Group.
25

26 (<http://business.scotsman.com/latest.cfm?id=1843512006>).

27         55.     On December 12, 2006, other companies, including AU Optronics,

28 Sharp, Sanyo Epson, indicated they were under investigation.

1    56.   According to one report, " '[t]he subject of the probe is price fixing,'

2 Akinori Yamada, a director of management and planning at Japan's Fair Trade

3 Commission, said in Tokyo today. He said LG.Philips and Samsung were being questioned,

4 although he declined to name or give the number of the other companies being investigated.

5 In Washington, U.S. Justice Department spokeswoman Gina Talamona said the agency 'is

6 investigating the possibility of anticompetitive practices'' and is cooperating with foreign

7 authorities."

8 (<http://www.bloomberg.com/apps/news?pid=20601080&sid=aSF7WY69eUPg&refer=a

9 sia>). Another report indicated that "Min Chun Hong, an analyst at Goodmorning Shinhan

10 Securities, said that if the companies [Samsung and LG Philips] were convicted, penalties

11 could amount to about 200 billion won, or $216 million, each." (<http://www.iht.com/

12 articles/2006/12/12/business/flat.php>).

13    57.   Michael Min, an analyst at Korea Investment and Securities, has been

14 quoted as saying that the investigation may be focused on a period over the last several

15 years when manufacturers of TFT-LCD Products were charging comparable prices.

16 (<http://www.washingtonpost.com/wp-dyn/content/article/2006/12/12/

17 AR2006121200260.html>).

18    58.   There are also other indications that defendants have engaged in

19 collusive activity. A "Crystal Cycle" is an industry term that refers to shortages in the

20 supply-and-demand cycle for LCD displays. A recent article in *Infoworld* (available at <

21 http://www.infoworld.com/article/06/06/13/79145_25OPreality_1.html>) cited Chris

22 Connery, an industry analyst at DisplaySearch, as follows: "[a]ccording to Connery, the

23 talk in the industry is that the manufacturers are looking to create an artificial Crystal Cycle.

24 At a recent conference in Taiwan, a leading producer of LCD glass stated publicly that the

25 industry should collectively look at cutting back on production from 100 percent to at least

26 85 percent. Otherwise, if supply outpaces demand, manufacturers will be forced to cut

27 prices. ... Will the mother-glass manufacturers actually create this artificial shortage? 'The

28

CLASS ACTION COMPLAINT

1 chatter is growing louder each day,' Connery says." A subsequent *Infoworld* article

2 (< http://www.infoworld.com/article/06/06/12/79223_HNphilipscutslcd_1.html >)

3 noted that the unnamed Taiwanese executive came from AU Optronics.

4         59.   Similarly, Samsung's presentation described above noted that "it was

5 possible to secure a reasonable amount of profit while following the industry leaders"

6 during the Class Period.

7         60.   Defendants, through their officers, directors and employees,

8 effectuated the aforesaid contract, combination, trust or conspiracy between themselves and

9 their co-conspirators by, among other things:

10         a.    participating in meetings and conversations, including through various

11         trade associations and committees, to discuss the prices of TFT-LCD Products in the

12         United States;

13         b.    agreeing, during those meetings and conversations, to charge prices at

14         specified levels and otherwise to increase and maintain prices of TFT-LCD Products

15         sold in the United States;

16         c.    issuing price announcements and quotations in accordance with the

17         agreements reached; and

18         d.    selling TFT-LCD Products to various customers in the United States

19         at non-competitive prices.

20         61.   Defendants' contract, combination, trust or conspiracy was centered

21 in, carried out, effectuated and perfected mainly in the State of California.  Therefore, all

22 members of the Class, whether or not California residents, are entitled to recover under

23 California law, as well as the laws of their own states.

**ACTIVE CONCEALMENT**

25         62.   Throughout and beyond the conspiracy, Defendants and their co-

26 conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff.

27 Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly

28 within the confines of their higher-level executives.  Defendants and their co-conspirators

1   publicly provided pretextual and false justifications regarding their price increases.

2   Defendants and their co-conspirators conducted their conspiracy in secret, concealed the

3   true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed

4   their activities through various other means and methods to avoid detection. Plaintiff did

5   not discover, and could not have discovered through the exercise of reasonable diligence,

6   that Defendants and their co-conspirators were violating the antitrust laws as alleged herein

7   until shortly before this class action litigation was commenced.

8          63.    As a result of the active concealment of the conspiracy by Defendants

9   and their co-conspirators, any and all applicable statutes of limitations otherwise applicable

10   to the allegations herein have been tolled.

11                          **VIOLATIONS ALLEGED**

12                          **First Claim for Relief**

13              **(Violation of Section 1 of the Sherman Act)**

14          64.    Plaintiff incorporates and realleges, as though fully set forth herein,

15   each and every allegation set forth in the preceding paragraphs of this Complaint.

16          65.    Beginning at a time presently unknown to Plaintiff, but at least as

17   early as January 1, 1998 and continuing through December 31, 2005, the exact dates being

18   unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing

19   agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix,

20   maintain, and/or stabilize prices for TFT-LCD Products in the United States, in violation of

21   Section 1 of the Sherman Act (15 U.S.C. §1).

22          66.    In formulating and carrying out the alleged agreement, understanding,

23   and conspiracy, the Defendants and their co-conspirators did those things that they

24   combined and conspired to do, including but not limited to the acts, practices, and course of

25   conduct set forth above, and the following, among others:

26          a.    To fix, raise, maintain and stabilize the price of TFT-LCD Products;

27          b.    To allocate markets for TFT-LCD Products among themselves;

28

1          c.      To submit rigged bids for the award and performance of certain TFT-

2  LCD Products contracts; and

3          d.      To allocate among themselves and collusively reduce the production

4  of TFT-LCD Products.

5          e.      The combination and conspiracy alleged herein has had the following

6  effects, among others:

7          f.      Price competition in the sale of TFT-LCD Products has been

8  restrained, suppressed, and/or eliminated in the United States;

9          g.      Prices for TFT-LCD Products sold by Defendants and their co-

10  conspirators have been fixed, raised, maintained and stabilized at artificially high,

11  non-competitive levels throughout the United States; and

12          h.      Those who purchased TFT-LCD Products directly or indirectly from

13  Defendants and their co-conspirators have been deprived of the benefits of free and

14  open competition.

15          67.     Plaintiff has been injured and will continue to be injured in its

16  business and property by paying more for TFT-LCD Products purchased indirectly from the

17  Defendants and their co-conspirators than he would have paid and will pay in the absence of

18  the combination and conspiracy, including paying more for personal computers and other

19  products in which TFT-LCD Products is a component as a result of higher prices paid for

20  TFT-LCD Products by the manufacturers of those products.

21          68.     Plaintiff and the class are entitled to an injunction against Defendants,

22  preventing and restraining the violations alleged herein.

23                      **Second Claim for Relief**

24          **(Violation of the California Cartwright Act)**

25          69.     Plaintiff incorporates and realleges, as though fully set forth herein,

26  each and every allegation set forth in the preceding paragraphs of this Complaint.

27          70.     Defendants' contract, combination, trust or conspiracy was centered

28  in, carried out, effectuated and perfected mainly within the State of California, and

75376.1                   -18-

CLASS ACTION COMPLAINT

1    Defendant's conduct within California injured all members of the Class throughout the

2    United States.  Therefore, this claim for relief under California law is brought on behalf of

3    all members of the Class, whether or not they are California residents.

4             71.     Beginning at a time presently unknown to Plaintiff, but at least as

5    early as January 1, 1998, and continuing thereafter at least up to December 31, 2005,

6    Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust

7    in restraint of the trade and commerce described above in violation of Section 16720,

8    California Business and Professional Code.  Defendants, and each of them, have acted in

9    violation of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate

10    markets for, TFT-LCD Products at supra-competitive levels.

11            72.     The aforesaid violations of Section 16720, California Business and

12    Professions Code, consisted, without limitation, of a continuing unlawful trust and concert

13    of action among the Defendants and their co-conspirators, the substantial terms of which

14    were to fix, raise, maintain and stabilize the prices of, and to allocate markets for, TFT-

15    LCD Products.

16            73.     For the purpose of forming and effectuating the unlawful trust, the

17    Defendants and their co-conspirators have done those things which they combined and

18    conspired to do, including but in no way limited to the acts, practices and course of conduct

19    set forth above and the following:

20            a.     to fix, raise, maintain and stabilize the price of TFT-LCD Products;

21            b.     to allocate markets for TFT-LCD Products amongst themselves;

22            c.     to submit rigged bids for the award and performance of certain TFT-

23        LCD Products contracts; and

24            d.     to allocate amongst themselves the production of TFT-LCD Products.

25            74.     The combination and conspiracy alleged herein has had, inter alia, the

26    following effects:

27

28

1       a.     price competition in the sale of TFT-LCD Products has been

2  restrained, suppressed and/or eliminated in the State of California and throughout the

3  United States;

4       b.     prices for TFT-LCD Products sold by Defendants and their co-

5  conspirators have been fixed, raised, maintained and stabilized at artificially high,

6  non-competitive levels in the State of California and throughout the United States;

7  and

8       c.     those who purchased TFT-LCD Products from Defendants and their

9  co-conspirators have been deprived of the benefit of free and open competition.

10      75.    Plaintiff and the other members of the Class paid supra-competitive,

11  artificially inflated prices for TFT-LCD Products.

12      76.    As a direct and proximate result of Defendants' unlawful conduct,

13  Plaintiff and the members of the Class have been injured in their business and property in

14  that they paid more for TFT-LCD Products than they otherwise would have paid in the

15  absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section

16  16720 of the California Business and Professions Code, Plaintiff seeks treble damages and

17  the costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the

18  California Business and Professions Code.

19                    **Third Claim for Relief**

20        **(Violation of the California Unfair Competition Law)**

21      77.    Plaintiff incorporates and realleges, as though fully set forth herein,

22  each and every allegation set forth in the preceding paragraphs of this Complaint.

23      78.    Defendants' business acts and practices were centered in, carried out,

24  effectuated and perfected mainly within the State of California, and Defendant's conduct

25  within California injured all members of the Class throughout the United States. Therefore,

26  this claim for relief under California law is brought on behalf of all members of the Class,

27  whether or not they are California residents.

28

CLASS ACTION COMPLAINT

1    79.  Beginning on a date unknown to Plaintiff, but at least as early as

2 January 1, 2002, and continuing thereafter at least up through December 31, 2005,

3 Defendants committed and continue to commit acts of unfair competition, as defined by

4 Sections 17200, et seq. of the California Business and Professions Code, by engaging in the

5 acts and practices specified above.

6    80.  This Claim is instituted pursuant to Sections 17203 and 17204 of the

7 California Business and Professions Code, to obtain restitution from these Defendants for

8 acts, as alleged herein, that violated Section 17200 of the California Business and

9 Professions Code, commonly known as the Unfair Competition Law.

10    81.  The Defendants' conduct as alleged herein violated Section 17200.

11 The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as

12 alleged herein, constituted a common continuous and continuing course of conduct of unfair

13 competition by means of unfair, unlawful and/or fraudulent business acts or practices within

14 the meaning of California Business and Professions Code, Section 17200, et seq., including,

15 but not limited to, the following:

16    a.  The violations of Section 1 of the Sherman Act, as set forth above;

17    b.  The violations of Section 16720, et seq., of the California Business

18  and Professions Code, set above;

19    c.  Defendants' acts, omissions, misrepresentations, practices and non-

20  disclosures, as described above, whether or not in violation of Section 16720, et seq.

21  of the California Business and Professions Code, and whether or not concerted or

22  independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

23    d.  Defendants' act and practices are unfair to consumers of TFT-LCD

24  Products in the State of California and throughout the United States, within the

25  meaning of Section 17200, California Business and Professions Code; and

26    e.  Defendants' acts and practices are fraudulent or deceptive within the

27  meaning of Section 17200 of the California Business and Professions Code.

28

82.    Plaintiff and each of the Class members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business acts or practices.

83.    The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

84.    The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and the members of the Class to pay supra-competitive and artificially-inflated prices for TFT-LCD Products. Plaintiff and the members of the class suffered injury in fact and lost money or property as a result of such unfair competition.

85.    The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

86.    As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiff and the members of the Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

**Fourth Claim for Relief**

**(Violation of State Antitrust and Unfair Competition Laws)**

87.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

88.    By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Alabama Code §§8-10-1 et seq.

89.    By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Arizona Revised Stat. §§44-1401 et seq.

90.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of California Bus. & Prof. Code §§16700 et seq. and Cal. Bus. & Prof. Code §§17200 et seq.

91.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§28-4503 et seq.

92.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Iowa Code §§553.1 et seq.

93.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§50-101 et seq.

94.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 et seq.

95.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws. Ann. §§445.773 et seq.

96.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§325D.52 et seq.

97.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §75-21-1 et seq.

98.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. §§59-801 et seq.

99.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§598A et seq.

100.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§57-1-1 et seq.

101.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§75-1 et seq.

102.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§51-08.1-01 et seq.

1        103.  By reason of the foregoing, defendants have entered into agreements

2  in restraint of trade in violation of the Pennsylvania common law.

3        104.  By reason of the foregoing, defendants have entered into agreements

4  in restraint of trade in violation of South Dakota Codified Laws Ann. §§37-1 et seq.

5        105.  By reason of the foregoing, defendants have entered into agreements

6  in restraint of trade in violation of Tennessee Code Ann. §§47-25-101 et seq.

7        106.  By reason of the foregoing, defendants have entered into agreements

8  in restraint of trade in violation of Vermont Stat. Ann. 9 §§2453 et seq.

9        107.  By reason of the foregoing, defendants have entered into agreements

10  in restraint of trade in violation of West Virginia §§47-18-1 et seq.

11        108.  By reason of the foregoing, defendants have entered into agreements

12  in restraint of trade in violation of Wisconsin Stat. §§133.01 et seq.

13        109.  Class Members in each of the states listed above paid supra-

14  competitive, artificially inflated prices for TFT-LCD Products.  As a direct and proximate

15  result of Defendants' unlawful conduct, such members of the Class have been injured in

16  their business and property in that they paid more for TFT-LCD Products than they

17  otherwise would have paid in the absence of Defendants' unlawful conduct.

18  **Fifth Claim for Relief**

19  **(Violation of State Consumer Protection and Unfair Competition Laws)**

20        110.  Plaintiff incorporate and reallege, as though fully set forth herein,

21  each and every allegation set forth in the preceding paragraphs of this Complaint.

22        111.  Defendants engaged in unfair competition or unfair, unconscionable,

23  deceptive or fraudulent acts or practices in violation of the state consumer protection and

24  unfair competition statutes listed below.

25        112.  Defendants have engaged in unfair competition or unfair or deceptive

26  acts or practices in violation of Alaska Stat. §§45.50.471 et seq.

27        113.  Defendants have engaged in unfair competition or unfair or deceptive

28  acts or practices in violation of Arkansas Code §4-88-101 et seq.

CLASS ACTION COMPLAINT

1          114.    Defendants have engaged in unfair competition or unfair or deceptive

2  acts or practices in violation of California Bus. & Prof. Code §17200 et seq.

3          115.    Defendants have engaged in unfair competition or unfair or deceptive

4  acts or practices in violation of District of Columbia Code §28-3901 et seq.

5          116.    Defendants have engaged in unfair competition or unfair or deceptive

6  acts or practices in violation of Florida Stat. §501.201 et seq.

7          117.    Defendants have engaged in unfair competition or unfair or deceptive

8  acts or practices in violation of Hawaii Rev. Stat. §480 et seq.

9          118.    Defendants have engaged in unfair competition or unfair or deceptive

10  acts or practices in violation of Idaho Code §48-601 et seq.

11          119.    Defendants have engaged in unfair competition or unfair or deceptive

12  acts or practices in violation of Kansas Stat. §50-623 et seq.

13          120.    Defendants have engaged in unfair competition or unfair or deceptive

14  acts or practices in violation of Louisiana Rev. Stat. §51:1401 et seq.

15          121.    Defendants have engaged in unfair competition or unfair or deceptive

16  acts or practices in violation of 5 Maine Rev. Stat. §207 et seq.

17          122.    Defendants have engaged in unfair competition or unfair or deceptive

18  acts or practices in violation of Montana Code §30-14-101 et seq.

19          123.    Defendants have engaged in unfair competition or unfair or deceptive

20  acts or practices in violation of Nebraska Rev. Stat. §59-1601 et seq.

21          124.    Defendants have engaged in unfair competition or unfair or deceptive

22  acts or practices in violation of New Mexico Stat. §57-12-1 et seq.

23          125.    Defendants have engaged in unfair competition or unfair or deceptive

24  acts or practices in violation of New York Gen. Bus. Law §349 et seq.

25          126.    Defendants have engaged in unfair competition or unfair or deceptive

26  acts or practices in violation of North Carolina Gen. Stat. §75-1.1 et seq.

27          127.    Defendants have engaged in unfair competition or unfair or deceptive

28  acts or practices in violation of Oregon Rev. Stat. §646.605 et seq.

1        128.   Defendants have engaged in unfair competition or unfair or deceptive

2  acts or practices in violation of Rhode Island Gen. Laws. §6-13.1-1 et seq.

3        129.   Defendants have engaged in unfair competition or unfair or deceptive

4  acts or practices in violation of South Carolina Code Laws §39-5-10 et seq.

5        130.   Defendants have engaged in unfair competition or unfair or deceptive

6  acts or practices in violation of Utah Code §13-11-1 et seq.

7        131.   Defendants have engaged in unfair competition or unfair or deceptive

8  acts or practices in violation of 9 Vermont §2451 et seq.

9        132.   Defendants have engaged in unfair competition or unfair or deceptive

10  acts or practices in violation of West Virginia Code §46A-6-101 et seq.

11        133.   Defendants have engaged in unfair competition or unfair or deceptive

12  acts or practices in violation of Wyoming Stat. §40-12-105.

13        134.   Class Members in the states listed above paid supra-competitive,

14  artificially inflated prices for TFT-LCD Products. As a direct and proximate result of

15  Defendants' unlawful conduct, Plaintiff and the members of the Class have been injured in

16  their business and property in that they paid more for TFT-LCD Products than they

17  otherwise would have paid in the absence of Defendants' unlawful conduct.

18                              **Sixth Claim for Relief**

19              **(Unjust Enrichment and Disgorgement of Profits)**

20        135.   Plaintiff incorporates and realleges, as though fully set forth herein,

21  each and every allegation set forth in the preceding paragraphs of this Complaint.

22        136.   Defendants have been unjustly enriched through overpayments by

23  Plaintiff and Class members and the resulting profits.

24        137.   Under common law principles of unjust enrichment, Defendants

25  should not be permitted to retain the benefits conferred via overpayments by Plaintiff and

26  Class members.

27

28

1        138.    Plaintiff seek disgorgement of all profits resulting from such

2  overpayments and establishment of a constructive trust from which Plaintiff and Class

3  members may seek restitution.

### PRAYER FOR RELIEF

5       WHEREFORE, Plaintiff prays:

6       1.    That the Court determine that the Sherman Act, state antitrust law,

7  and  state consumer protection and/or unfair competition law claims alleged herein may be

8  maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of

9  Civil Procedure;

10      2.    That the unlawful conduct, contract, conspiracy or combination

11  alleged herein be adjudged and decreed to be:

12        a.    A restraint of trade or commerce in violation of Section 1 of the

13     Sherman Act, as alleged in the First Claim for Relief;

14        b.    An unlawful combination, trust, agreement, understanding, and/or

15     concert of action in violation of the state antitrust laws identified in the Second and

16     Fourth Claims for Relief herein;

17        c.    Violations of the state consumer protection and unfair competition

18     laws identified in the Third and Fifth Claims for Relief herein; and

19        d.    Acts of unjust enrichment as set forth in the Sixth Claim for Relief

20     herein.

21      3.    That Plaintiff and the Class recover damages, as provided by federal

22  and state antitrust laws, and that a joint and several judgment in favor of Plaintiff and the

23  Class be entered against the Defendants in an amount to be trebled in accordance with such

24  laws;

25      4.    That Defendants, their affiliates, successors, transferees, assignees,

26  and the officers, directors, partners, agents, and employees thereof, and all other persons

27  acting or claiming to act on their behalf, be permanently enjoined and restrained from in

28  any manner:  (1) continuing, maintaining, or renewing the conduct, contract, conspiracy or

1 | combination alleged herein, or from entering into any other conspiracy alleged herein, or

2 | from entering into any other contract, conspiracy or combination having a similar purpose

3 | or effect, and from adopting or following any practice, plan, program, or device having a

4 | similar purpose or effect; and (2) communicating or causing to be communicated to any

5 | other person engaged in the sale of TFT-LCD Products, information concerning bids of

6 | competitors;

7 |         5.     That Plaintiff be awarded restitution, including disgorgement of

8 | profits obtained by Defendants as a result of their acts of unfair competition and acts of

9 | unjust enrichment;

10 |         6.     That Plaintiff and members of the Class be awarded pre- and post-

11 | judgment interest, and that that interest be awarded at the highest legal rate from and after

12 | the date of service of the initial complaint in this action;

13 |         7.     That Plaintiff and members of the Class recover their costs of this

14 | suit, including reasonable attorneys' fees as provided by law; and

15 |         8.     That Plaintiff and members of the Class have such other, further, and

16 | different relief as the case may require and the Court may deem just and proper under the

17 | circumstances.

18 | Dated:  December 12, 2006          Respectfully submitted,

19 |

20 |                     By: _____
Michael P. Lehmann

21 | Thomas P. Dove
Christopher L. Lebsock

22 | Jon T. King
FURTH LEHMANN & GRANT LLP

23 | 225 Bush Street, 15th Floor
San Francisco, CA 94104-4249

24 | Telephone:  (415) 433-2070
Facsimile:   (415) 982-2076

25 |

26 |

27 |

28 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Francis O. Scarpulla
Craig C. Corbitt
ZELLE HOFMANN VOELBEL MASON &
    GETTE LLP
44 Montgomery Street
Suite 3400
San Francisco, CA 94104
Telephone:  (415) 693-0700
Facsimile:   (415) 693-0770

75376.1

CLASS ACTION COMPLAINT

1

### JURY TRIAL DEMAND

2        Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

3 demands a trial by jury for all issues so triable.

4 Dated:  December 12, 2006                    Respectfully submitted,

5

6                                      By:

7                                      Michael P. Lehmann
                                       Thomas P. Dove
                                       Christopher L. Lebsock
8                                      Jon T. King
                                       FURTH LEHMANN & GRANT LLP
9                                      225 Bush Street, 15th Floor
                                       San Francisco, CA 94104-4249
10                                     Telephone:  (415) 433-2070
                                       Facsimile:   (415) 982-2076
11
                                       Francis O. Scarpulla
12                                     Craig C. Corbitt
                                       ZELLE HOFMANN VOELBEL MASON &
13                                           GETTE LLP
                                       44 Montgomery Street, Suite 3400
14                                     San Francisco, CA 94104
                                       Telephone:  (415) 693-0700
15                                     Facsimile:   (415) 693-0770

16

17

18

19

20

21

22

23

24

25

26

27

28

75376.1                              -30-
CLASS ACTION COMPLAINT