IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br>_____ /<br>This Order Relates to:<br>ALL CASES<br>_____ / | No. M 07-1827 SI<br>MDL. No. 1827<br>**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS DIRECT PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED COMPLAINT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS INDIRECT PURCHASER PLAINTIFFS' SECOND AMENDED CONSOLIDATED COMPLAINT; GRANTING DIRECT PURCHASER PLAINTIFFS' MOTION TO FILE SECOND AMENDED CONSOLIDATED AMENDED COMPLAINT** |

On February 27, 2009, the Court heard argument on defendants' motions to dismiss the direct purchaser plaintiffs' first amended consolidated complaint, defendants' motions to dismiss the indirect purchaser plaintiffs' second amended consolidated complaint, and the direct purchaser plaintiffs' motion to amend the complaint.[1] For the reasons set forth below, the Court DENIES defendants' motions to dismiss the direct purchaser plaintiffs' first amended complaint,[2] GRANTS IN PART and DENIES IN PART defendants' motions to dismiss the indirect purchaser plaintiffs' second amended consolidated complaint, and GRANTS the direct purchaser plaintiffs' motion to file a second amended consolidated complaint.

---

[1] The motion to amend was set for hearing on March 6, 2009. However, defendants' opposition to the motion to amend centers on the same issues which are decided in this order. Hence, the March 6, 2009 hearing on the motion to amend is VACATED and the motion will be decided in this order.

[2] The Court will issue a separate order on Tatung Company of America, Inc.'s motion to dismiss the direct purchaser plaintiffs' first amended consolidated complaint.

**BACKGROUND**

By order filed August 25, 2008, the Court largely denied defendants' motions to dismiss the direct and indirect purchaser consolidated complaints. Docket No. 666. The Court found, however, that the complaints lacked sufficient allegations specific to each defendant, and granted defendants' motions to dismiss in that respect. The Court granted plaintiffs leave to amend to more specifically plead how each defendant joined the alleged price-fixing conspiracy. The Court stated that "plaintiffs need not plead each defendant's involvement in the alleged conspiracy in elaborate detail, but must simply include allegations specific to each defendant alleging that defendant's role in the alleged conspiracy." *Id.* at 6-7.

On December 5, 2008, the direct purchaser plaintiffs filed a first amended consolidated complaint and the indirect purchaser plaintiffs filed a second amended consolidated complaint. The complaints include new allegations about the alleged price-fixing conspiracy, including details about group and bilateral meetings through which the alleged conspiracy was effectuated. The complaints also add new information about guilty pleas recently entered by three TFT-LCD manufacturers who are defendants in this multi-district litigation: LG Display Co. Ltd. (and its U.S. subsidiary, LG Display America, Inc.), Sharp Corporation, and Chunghwa Picture Tubes, Ltd. DP-FACC ¶¶ 137-145; IP-SACC ¶¶ 189-191.

Defendants have moved to dismiss the complaints on several grounds. Defendants contend that the complaints do not adequately allege each defendant's participation in the alleged conspiracy, and that the case should be limited to the 2001 - 2006 time period, the same time period covered by the related criminal pleas.[3] Defendants raise additional arguments with respect to particular state law claims alleged by the indirect purchaser plaintiffs.

The direct purchaser plaintiffs seek leave to file a second amended consolidated complaint to add a new plaintiff, Texas Digital Systems, Inc. Defendants oppose the motion solely on the grounds articulated in the motion to dismiss the first amended consolidated complaint.

---

[3] Notwithstanding their entry of guilty pleas to felony violations of 15 U.S.C. § 1, defendants LG Display Co. Ltd., LG Display America, Inc., and Sharp Corporation have joined in the motions to dismiss the amended complaints for failure to meet the notice pleading requirements of the Federal Rules of Civil Procedure.

**LEGAL STANDARD**

Dismissal of a complaint may be based "on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). On a motion to dismiss, the Court accepts the facts alleged in the complaint as true. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

Federal Rule of Civil Procedure 8 requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). The complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Id.* at 1965.

**DISCUSSION**

**I.    Sufficiency of allegations specific to each defendant**

Defendants contend that the amended consolidated complaints do not adequately allege each defendant's role in the alleged conspiracy. Defendants argue that the complaints continue to "lump together" the twenty-six different named defendants in general allegations referring to "defendants," or groups of defendants sorted by country or corporate family. All plaintiffs counter that the new paragraphs added to the amended complaints sufficiently allege each defendant's participation and role in the alleged conspiracy.

The Court finds that the amended consolidated complaints more than adequately allege the involvement of each defendant and put defendants on notice of the claims against them. Contrary to defendants' suggestion, neither *Twombly* nor the Court's prior order requires elaborate fact pleading. Further, the Supreme Court has recognized that "in complex antitrust litigation," "motive and intent play leading roles," and "the proof is largely in the hands of the alleged conspirators." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962). The amended complaints add detail about numerous illicit

3

conspiratorial communications between and among defendants (DP-FACC ¶¶ 105-133; IP-SACC ¶¶ 130-148), and facts of the guilty pleas entered by four defendants for fixing prices of TFT-LCD. DP-FACC ¶¶ 137-147; IP-SACC ¶¶ 189-191. The complaints contain additional specific information about the group and bilateral meetings by which the alleged price-fixing conspiracy was effectuated. The complaints allege that group or "crystal" meetings were attended by employees at three general levels of defendants' corporations, and contains details about the structure and content of these meetings, as well as the types of employees who attended the meetings. DP-FACC ¶¶ 106-113; IP-SACC ¶¶ 133-141. The complaints allege that the "crystal" meetings were supplemented by bilateral discussions between various defendants about past and future pricing, as well as information about shipments, and that these discussions took the form of in-person meetings, telephone calls, e-mails and instant messages. DP-FACC ¶¶ 114-115; IP-SACC ¶¶ 142-143. The complaint also alleges which types of meetings the defendants and co-conspirators participated in, and in some instances includes more detail such as the year of a meeting and other meeting participants. *See, e.g.* DP-FACC ¶¶ 126-128; IP-SACC ¶¶ 144-148.

Defendants complain that the complaints still do not differentiate between related corporate entities. As described in the complaints, the alleged conspiracy was organized at the highest level of the defendant organizations and carried out by both executives and subordinate employees. The complaints allege that the conspiracy was implemented by subsidiaries and distributors within a corporate family, and that "individual participants entered into agreements on behalf of, and reported these meetings and discussions to, their respective corporate families." DP-FACC ¶ 130; *see also* IP-SACC ¶¶ 96, 100. Plaintiffs also allege that "the individual participants in conspiratorial meetings and discussions did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family." *Id*. The complaints allege a complex, multinational price-fixing conspiracy and, taken as a whole, they sufficiently allege each defendants' participation in that conspiracy, as well as present a factual basis for the allegations of agency. *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) ("Although Plaintiffs will need to provide evidence of each Defendants' participation in any conspiracy, they now only need to make allegations that plausibly suggest that each Defendant participated in the alleged

4

Case 3:06-cv-07588-SI Document 126 Filed 03/03/09 Page 5 of 17

conspiracy.").

## II. Proper time period

Defendants contend that plaintiffs have not alleged any facts that would support a plausible inference of anticompetitive conduct before 2001. Defendants argue that the complaints allege that the "crystal" meetings only began in 2001, the guilty pleas in the criminal cases only cover the 2001-2006 time period, and that the "price dispersion" charts in the complaints do not show diminished price dispersion consistent with a conspiracy prior to 2001.

Plaintiffs counter that the complaints include numerous allegations about the period prior to 2001, including allegations that beginning in at least 1996, Hitachi, Sharp and Toshiba met or talked with at least one other defendant in order to agree on TFT-LCD product prices and the amount of TFT-LCD products each would produce. DP-FACC ¶ 4; IP-SACC ¶ 130. The complaints also allege indicia of price-fixing and market manipulation, such as unusual pricing practices, prior to 2001. *See, e.g.*, DP-FACC ¶¶ 147, 150, 157; IP-SACC ¶¶ 153-157. Plaintiffs also argue that defendants' arguments are misplaced at the pleadings stage of the litigation, and that there are any number of plausible reasons why the criminal guilty pleas would cover the 2001-2006 time period while still allowing for civil liability during the 1996-2001 period, such as criminal statutes of limitation and higher burdens of proof in criminal cases.

The Court finds that the complaints sufficiently allege anticompetitive conduct during the 1996-2001 time period, and will not limit the class period at this stage of the litigation.[4] Whether discovery bears out plaintiffs' allegations regarding the earlier time period is a different matter, and defendants may renew their challenges to the pre-2001 claims upon a fuller factual record.

---

[4] Defendants have also moved to dismiss direct purchaser plaintiff Phelps Technology Inc. on the ground that Phelps' claims arise out of pre-2001 purchases of TFT-LCD panels. Because the Court finds that the complaint's pre-2001 allegations are sufficient, the Court denies defendants' motion to dismiss Phelps Technology Inc. on this ground.

5

### III. State law claims alleged in indirect purchaser plaintiffs' second amended consolidated complaint

#### A. Virginia, Montana, and Puerto Rico

The indirect purchaser plaintiffs have alleged claims under the state antitrust laws of Virginia, Montana and Puerto Rico. Defendants move to dismiss these claims on the ground that these state antitrust laws are, pursuant to either statutory harmonization provisions or case law, required to be interpreted in accordance with federal antitrust law. Defendants contend that because indirect purchasers lack standing under federal law pursuant to *Illinois Brick*, and Virginia, Montana and Puerto Rico have not repealed *Illinois Brick* either by statute or case law, the indirect purchaser plaintiffs lack standing here. Defendants note that there are no antitrust cases in Virginia, Montana or Puerto Rico permitting indirect purchasers to bring suit under the state antitrust laws, and that both Judge Alsup and Judge Hamilton have held that indirect purchasers lack standing under similar circumstances. *See California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1150 (N.D. Cal. 2007) (indirect purchasers lack standing to seek antitrust damages under Virginia Antitrust Act); *In re Graphics Processing Units Antitrust Litig.* ("*GPU*"), 527 F. Supp. 2d 1011, 1027 (N.D. Cal. 2007) (stating, in context of striking allegations of nationwide class under California law, that in states that have not repealed *Illinois Brick*, "indirect purchasers are barred from bringing antitrust claims, other than for injunctive relief").

#### 1. Virginia

With regard to Virginia, plaintiffs respond that the state harmonization provision, Va. Code Ann. § 59.1-9.17, was enacted prior to *Illinois Brick*, at a time when indirect purchasers had standing under federal law. Thus, plaintiffs contend that the harmonization provision indicates legislative intent to allow indirect purchaser suits under the then-prevailing federal law. Plaintiffs also argue that the differences between the Virginia statute – namely the statement of the Virginia statute's purpose, and the fact that treble damages are discretionary under the state statute – support a determination that Virginia law would permit indirect purchaser suits.

The Court disagrees, and finds that in light of Virginia's harmonization provision requiring courts to interpret the Virginia Antitrust Act in harmony with federal law, and the absence of any

1 Virginia authority holding that indirect purchasers have standing under the state statute, indirect 2 purchasers may not seek damages under the Virginia statute. Virginia's harmonization statute broadly 3 mandates: "This chapter shall be applied and construed to effectuate its general purposes in harmony 4 with judicial interpretation of comparable federal statutory provisions." *See* Va. Code Ann. § 59.1-9.17; 5 *see also Oksanen v. Page Memorial Hosp.*, 945 F.2d 696, 710 (4th Cir. 1991) ("[T]he Virginia Act 6 specifically provides that it is to be interpreted and applied in harmony with federal antitrust law. 7 Va.Code Ann. § 59.1-9.17. Because Oksanen has failed to establish his restraint of trade and monopoly 8 claims under federal law, his state law antitrust claims likewise fail."). Once *Illinois Brick* was decided, 9 the Virginia legislature was free to pass an *Illinois Brick* repealer statute, as many states did. Virginia 10 did not, and the Court is required to follow the plain language of the harmonization provision, rather 11 than attempt to divine the legislative intent of the pre-*Illinois Brick* legislature in passing the 12 harmonization provision. The Virginia Antitrust Act does not explicitly confer standing on indirect 13 purchaser plaintiffs, and plaintiffs have not cited any Virginia case law suggesting that indirect 14 purchasers have standing under the state statute. Plaintiffs have not articulated any reason why the 15 purported differences between the Virginia statute and the Sherman Act are relevant to the question of 16 indirect purchaser standing. Accordingly, the Court agrees with Judge Hamilton's ruling in *Infineon* 17 *Technologies*, 531 F. Supp. 2d at 1150, and holds that the indirect purchaser plaintiffs lack standing 18 under the Virginia Antitrust Act. The Court GRANTS defendants' motion to dismiss this claim.

20         **2.**       **Montana**

21 In *Smith v. Video Lottery Consultants, Inc.*, 858 P.2d 11 (Mont. 1993), the Supreme Court of 22 Montana noted that sections of the Montana Unfair Trade Practices Act, Mont. Code Ann. §§ 30-14-201 23 *et seq.*, were modeled after the Sherman Act, and that where "the statutes are similar, we will give due 24 weight to the federal courts' interpretation of this type of alleged antitrust violation." *Id*. at 13. The 25 *Smith* court noted that Montana law differed from the Sherman Act is some respects, such as the 26 Sherman Act's requirement of two or more persons to be involved in an lawful restraint of trade, while 27 one person acting alone may violate the Montana act. *Id*. at 11.

28 Defendants contend that there is no facial difference between the standing provisions of federal

7

and Montana law, and thus this Court must give "due weight" to *Illinois Brick* and dismiss the indirect purchaser plaintiffs' claims under Montana law. The standing provision of the Montana statute allows any "person who is or will be injured" to sue for damages and injunctive relief. Mont. Code Ann. § 30-14-222. Section 4 of the Clayton Act, 15 U.S.C. § 15, allows "any person who shall be injured" to sue for damages and injunctive relief. Plaintiffs respond that *Smith* stands for the proposition that the Montana statute is generally broader than the Sherman Act, and thus that the Court should construe the Montana act to confer standing on indirect purchaser plaintiffs.

In the absence of any Montana authority holding that indirect purchaser plaintiffs have standing under Montana antitrust law, the Court declines to find so. Contrary to plaintiffs' characterization of *Smith*, the Supreme Court of Montana did not hold, as a general matter, that the Montana statute is broader than federal law. Instead, the court distinguished between instances when state and federal law differed, and those sections of the Montana statute that were modeled after the Sherman Act. With regard to the latter, the *Smith* court instructed that where "the statutes are similar, we will give due weight to the federal courts' interpretation of this type of alleged antitrust violation." 858 P.2d at 13. Here, the standing provisions of the Montana act and the Sherman Act are almost identically worded. Plaintiffs have not identified any relevant difference between the two statutes that would require a different result, nor have plaintiffs cited any Montana authority holding that indirect purchaser plaintiffs have standing under Montana law. Accordingly, the Court GRANTS defendants' motion to dismiss the claims under Montana law.

### 3. Puerto Rico

Defendants similarly contend that plaintiffs' claims under the Puerto Rico Antitrust Act are barred because that statute is to be construed in harmony with federal antitrust law, and there has been no repeal of *Illinois Brick*. Plaintiffs respond that the Puerto Rico legislature has specifically recognized the rights of "consumers" to bring class actions under the Puerto Rico Antitrust Act, and that thus indirect purchasers – who are consumers – have standing under the statute. *See* 32 L.P.R.A. § 3342 ("There is recognized the right to merchants, to consumers of goods and services and to the Commonwealth of Puerto Rico to file a class suit on behalf of said merchants or consumers based on

8

the Antitrust Act of the Commonwealth, §§ 257-274 of Title 10."). Plaintiffs also cite *Arroyo-Melecio v. Puerto Rican American Insurance Co.*, 398 F.3d 56, 72 (1st Cir. 2005), which held that the plaintiff consumers had standing under the Puerto Rico Antitrust Act. However, that case involved a class action brought by consumers of compulsory automobile insurance against insurance companies, and thus the plaintiffs there were not akin to indirect purchasers. Plaintiffs also cite *Comes v. Microsoft Corporation*, 646 N.W.2d 440, 448 (Iowa 2002), which states in dicta that "In total, nineteen states, the District of Columbia, and Puerto Rico have statutes explicitly authorizing indirect purchasers to maintain an antitrust suit." The *Comes* court does not cite a Puerto Rico statute in support of this statement.

The Court finds, for the same reasons discussed above, that the indirect purchaser plaintiffs lack standing under the Puerto Rico statute. The Court is reluctant to find standing in the absence of an explicit *Illinois Brick* repealer, either by statute or case law. Accordingly, the Court GRANTS defendants' motion to dismiss plaintiffs' claims under the Puerto Rico antitrust statute.

### B.     Mississippi and Nevada

Defendants move to dismiss the indirect purchaser plaintiffs' state law antitrust claims under Mississippi and Nevada law because plaintiffs have not alleged that any part of defendants' conduct took place in those states. Mississippi's antitrust laws prohibit understandings or agreements to "restrain trade," "increase . . . the price of a commodity," or "hinder competition in the production, importation, . . . or sale or purchase of a commodity." Miss. Code Ann. § 75-21-1. Defendants note that the indirect purchaser plaintiffs allege that defendants' conduct occurred mainly in the State of California, and that the complaint only alleges *effects* in Mississippi, not *conduct*.

The Court agrees with defendants that the Mississippi Antitrust Act requires some allegations of intrastate conduct, but finds that plaintiffs have sufficiently alleged such conduct. The complaint alleges that "LCD price competition was restrained, suppressed, and eliminated throughout Mississippi," "LCD prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi," and that plaintiffs "were deprived of free and open competition" and "paid supracompetitive, artificially inflated prices for LCD." IP-SACC ¶ 269(a). Courts have held that

9

similar allegations are sufficient to state a claim under the Mississippi Act. *See In re Graphics Processing Units Antitrust Litig.* ("*GPU II*"), 540 F. Supp. 2d 1085, 1099 (N.D. Cal. 2007) (permitting claim under Mississippi law where plaintiffs alleged that defendants' conspiracy substantially affected commerce in state, injured Mississippi residents, defendants promoted products in state and harmed competition in state); *see also Infineon Techs.*, 531 F. Supp. 2d at 1158-59 ("the Mississippi Antitrust Act should be construed to require allegations of at least some activity or conduct occurring in intrastate commerce or trade"; dismissing complaint with leave to amend where plaintiffs failed to allege "any activity of any kind – sales, purchases, or other activities in trade or commerce"). Plaintiffs' allegation that defendants' conduct occurred mainly in California is not inconsistent with alleging anticompetitive conduct in Mississippi. *See Standard Oil Co. of Ky. v. State ex rel. Attorney General*, 107 Miss. 377 (Miss. 1914), *overruled in part on other grounds sub nom. Mladinich v. Kohn*, 250 Miss. 138 (Miss. 1964) (sustaining claim where plaintiffs alleged nationwide conspiracy to monopolize trade in petroleum and petroleum products, no petroleum produced in Mississippi, defendants sold and distributed petroleum products in Mississippi).

Likewise, Nevada's antitrust law states that "[m]onopolization of trade or commerce in this state, including, without limitation, attempting to monopolize or otherwise combining or conspiring to monopolize trade or commerce in this state" constitutes a "contract, combination or conspiracy in restraint of trade, and it is unlawful to conduct any part of such activity in this state." Nev. Rev. Stat. Ann. § 598A.0601(e). Plaintiffs' allegations with regard to Nevada are similar to those for Mississippi. IP-SACC ¶ 271(a). The Court finds these allegations are sufficient to state a claim under the Nevada statute. *See In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 413-14 (D. Del. 2007) (denying motion to dismiss Nevada claim where complaint alleged nationwide price-fixing conspiracy and goods sold in Nevada).

Accordingly, the Court DENIES defendants' motion to dismiss plaintiffs' Mississippi and Nevada state law antitrust claims.

### C. Michigan, Florida, North Carolina and North Dakota

Defendants argue that plaintiffs' unjust enrichment claims under Michigan, Florida, North

1 Carolina, and North Dakota law must be dismissed because the law of these states require that plaintiffs
2 have conferred a "direct benefit" on defendants, and the indirect purchasers cannot allege such a direct
3 benefit.

### 1. Michigan

Citing *A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883, (Mich. App. Feb. 28, 2008) (per curiam), defendants contend that Michigan's "highest court" recently held that indirect purchasers in a price-fixing case cannot bring a claim for unjust enrichment because a plaintiff must have conferred a direct benefit upon the defendant. Joint motion at 14; Reply at 12.[5] In *A&M Supply*, the Michigan Court of Appeals (not the Michigan Supreme Court, which is Michigan's highest court), affirmed a trial court's dismissal for failure to prosecute. In an unpublished per curiam decision, the court alternatively held that the lawsuit was subject to dismissal on the merits because, "the unjust enrichment doctrine does not apply under the facts alleged by plaintiff here." *Id*. at *2. The court noted that there was "no [] direct contact between Microsoft and the indirect purchasers in the class they seek to have certified. Nor can they show that Microsoft received any direct payment or other benefit from those purchasers." *Id*. at *2. There is no further discussion of the facts of the case. While *A& M* provides some support for defendants' position, it is hardly the controlling authority that defendants suggest.

Plaintiffs cite several cases, including a Michigan Supreme Court case, for the proposition that they need not allege a direct benefit to defendants to state an unjust enrichment claim in Michigan. *See, e.g.*, *Kammer Asphalt Paving Co., Inc. v. East China Tp. Schools*, 504 N.W.2d 635, 640-41 (Mich. 1993); *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904-905 (Mich. Ct. App. 2006); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 670-71 (E.D. Mich. 2000). These three cases hold that a party can bring an unjust enrichment claim against a defendant even in the absence of privity or a contract between the parties. *In re Cardizem* is the most factually apposite. In that antitrust case, the indirect purchaser plaintiffs "alleged that they conferred a benefit, in the form of overpayments and

---

[5] Indeed, defendants strenuously argue that plaintiffs' lower court authority should be disregarded because *A&M* was issued by the highest court in Michigan.

11

1  increased profits, on Defendants, that Defendants accepted that benefit and that it would be unjust under
2  the alleged circumstances for Defendants to retain that benefit." 105 F. Supp. 2d at 671. The court
3  rejected the defendants' "narrow" argument that a direct benefit was required under Michigan law.
4  "Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the
5  plaintiff must show that his detriment and the defendant's benefit are related and flow from the
6  challenged conduct." *Id*.

7  Here, plaintiffs' allegations are similar to those alleged in *In re Cardizem*. The Court finds that
8  plaintiffs have stated a claim for unjust enrichment under Michigan law, and DENIES defendants'
9  motion to dismiss this claim.

### 2. North Carolina

12  Defendants rely on *Effler v. Pyles*, 380 S.E. 2d 149 (N.C. Ct. App. 1989), in which the North
13  Carolina Court of Appeals affirmed summary judgment in favor of a defendant because the plaintiff had
14  not shown that she conferred a benefit directly on the defendant. Cases since *Effler*, however, have
15  suggested that *Effler*'s holding is narrow, and that there is no requirement of "direct benefit" in cases
16  alleging fraud or civil conspiracy. *See, e.g.*, *Perkins v. Healthmarkets, Inc.*, 2007 WL No. 06 CVS
17  21053, 2007 WL 2570242, at *9 (N.C. Super. Ct. July 30, 2007). In any event, in affirming the trial
18  court's summary judgment, the *Effler* court relied on the North Carolina Supreme Court's decision in
19  *Booe v. Shadrick*, 322 N.C. 567 (N.C. 1988). *Booe* did not, however, require that a benefit be direct to
20  state an unjust enrichment claim. "In order to establish a claim for unjust enrichment, a party must have
21  conferred a benefit on the other party. The benefit must not have been conferred officiously, that is it
22  must not be conferred by an interference in the affairs of the other party in a manner that is not justified
23  in the circumstances. The benefit must not be gratuitous and it must be measurable." *Booe,* 322 N.C.
24  at 570.

25  Here, plaintiffs have alleged that they conferred a benefit on defendants by paying higher prices
26  for LCD products than they would have in the absence of the alleged price-fixing conspiracy. The Court
27  finds under *Booe* that these allegations are sufficient to state a claim, and DENIES defendants' motion
28  to dismiss plaintiffs' unjust enrichment claims under North Carolina law.

12

### 3. North Dakota

Relying on *Apache Corporation v. MDU Resources Group, Inc.*, 603 N.W.2d 891, 895 (N.D. 1999), defendants move to dismiss the indirect purchaser plaintiffs' unjust enrichment claim under North Dakota law. In *Apache*, the North Dakota Supreme Court stated that the doctrine of unjust enrichment "is invoked when a person has and retains money or benefits which in justice and equity belong to another. . . . For a complainant to recover, it is sufficient if another has, without justification, *obtained a benefit at the direct expense* of the [complainant], who then has no legal means of retrieving it." (internal quotations omitted, emphasis added). Apache alleged that it was a third-party beneficiary of contracts between the defendant and a third party, and that when the defendant breached that contract, the defendant was unjustly enriched at Apache's expense. The court affirmed the dismissal of Apache's unjust enrichment claim, noting that "the money MDU saved by breaching its contract with Koch was not a 'benefit at the direct expense of' Apache." *Id*. at 895.

Plaintiffs argue that *Apache* does not establish that a "direct benefit" is a requirement under North Dakota law, and they emphasize language in *Apache* that "the essential element of recovering under a theory of unjust enrichment – receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value – is present here." *Id*. (internal quotations and citations omitted). Plaintiffs distinguish *Apache* on the ground that there the plaintiff had not in fact conferred any benefit on the defendant, whereas here plaintiffs do allege that they have conferred a benefit on defendants. Although this factual distinction is correct, the broader language of *Apache* suggests that a "direct benefit" is required under North Dakota law. *See In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 28 (D. Mass. 2004) (interpreting *Apache* to require direct benefit and dismissing unjust enrichment claims brought by indirect purchasers). Plaintiffs have not cited any authority holding that North Dakota law does not require a direct benefit, and in the face of *Apache*, the Court is inclined to agree with defendants.

Accordingly, the Court GRANTS defendants' motion to dismiss plaintiffs' unjust enrichment claims under North Dakota law.

### D.     Unjust enrichment– Arkansas, Virginia, Montana and Puerto Rico

Defendants move to dismiss plaintiffs' unjust enrichment claims under Arkansas, Virginia, Montana and Puerto Rico law, arguing that plaintiffs are improperly attempting to circumvent the antitrust laws of those jurisdictions, under which they lack antitrust standing.[6] Defendants contend that plaintiffs may not circumvent the restrictions on antitrust claims under Arkansas, Virginia, Montana and Puerto Rico law by reframing those claims as unjust enrichment actions, and they cite a number of cases which stand for that general proposition. *See, e.g.*, *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464 (D. Md. 2005) ("[T]he specific bar on indirect purchaser recovery incorporated into South Carolina's antitrust statutes prohibits Plaintiff's general common-law [unjust enrichment] claim."); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 211 (D. Me. 2004) ("For those states that have maintained the *Illinois Brick* prohibition on indirect purchaser recovery, I conclude that it would subvert the statutory scheme to allow these same indirect purchasers to secure, for the statutory violation, restitutionary relief at common law (or in equity)."); *see also GPU II*, 540 F. Supp. 2d at 1100 (allowing plaintiffs to maintain unjust enrichment claims because they have "excised unjust-enrichment claims for states that do not recognize antitrust remedies for indirect purchasers, so this claim is no longer attempting to circumvent the laws of states that do not recognize claims for damages by indirect purchasers.").

Plaintiffs rely on *In re Cardizem* to argue that in that case, "defendants made a similar argument that plaintiff indirect purchasers could not proceed with unjust enrichment claims in states where they could not recover under the state's antitrust or consumer protection laws," and that the court "resoundly rejected" that argument. Indirect Purchasers' Opposition at 19. In fact, in *In re Cardizem*, the defendants moved to dismiss state law antitrust claims on a variety of grounds, but did *not* contend that indirect purchaser plaintiffs lacked antitrust standing based on *Illinois Brick* and harmonization with federal law. *See generally*, *In re Cardizem*, 105 F. Supp. 2d at 645 (antitrust injury); 659 (whether state

---

[6] Defendants contend – and plaintiffs do not disagree – that plaintiffs do not have standing to seek relief under Arkansas antitrust law because that law only permits predatory pricing claims alleging that items were sold "at less than cost" and does not create a private right of action for an alleged conspiracy to raise prices. *See* Ark. Code Ann. § 4-75-310; *see also FTC v. Mylan Labs, Inc.*, 62 F. Supp. 2d 25, 44-45 (D.D.C. 1999).

14

law claims preempted by Hatch-Waxman Act); 664 (whether state claims required court to enforce FTC consent decree); 665-68 (whether Wisconsin and Tennessee antitrust statutes require wholly intrastate conduct). Further, the *In re Cardizem* court *denied* the defendants' motion to dismiss the state antitrust claims. The *Cardizem* defendants moved to dismiss the state unjust enrichment claims arguing first "that Plaintiffs' unjust enrichment claims are dependent upon the allegations supporting their state law antitrust claims and thus suffer from the same flaws that preclude Plaintiffs from stating an antitrust claim." *Id*. at 669. It is within this context that the court denied the motion to dismiss, holding "[t]he first of Defendants' arguments fails to read Plaintiffs' complaint in the light most favorable to Plaintiffs and confuses Plaintiffs' right to recover an equitable remedy under a common law claim based upon principles of unjust enrichment with its right to recover a remedy at law for an alleged violation of a state's antitrust laws." *Id*. Contrary to plaintiffs' suggestion, the *Cardizem* court did not hold that indirect purchaser plaintiffs who lacked standing under a state antitrust statute could repackage that claim as an unjust enrichment claim.

Plaintiffs also cite *D.R. Ward Construction Company v. Rohm & Haas Co.*, 470 F. Supp. 2d 485 (E.D. Pa. 2006). There, the defendants moved to dismiss unjust enrichment claims under Tennessee, Arizona and Vermont law, and argued that "in jurisdictions which possess antitrust statutes conferring standing on indirect purchasers, an indirect purchaser may only bring a statutory claim for alleged anti-competitive behavior." *Id*. at 506. The defendants also argued that if the plaintiffs' state antitrust claims were defective, the plaintiffs could not recover restitution through an unjust enrichment claim based on the same predicate wrong. *Id*. The court rejected the defendants' arguments and permitted the three state unjust enrichment claims, holding that "the viability of these claims does not hinge upon the success of the state statutory antitrust claims." *Id*. However, unlike the situation presented here, and as the *D.R. Ward* court noted "most importantly" in reaching its conclusion, "Tennessee, Arizona, and Vermont all permit indirect purchasers to pursue antitrust claims; thus, an unjust enrichment claim would not circumvent the procedural and substantive limitations of these antitrust statutes." *Id*. at 507. Thus, rather than supporting plaintiffs' position, *D.R. Ward* undermines it.

Here, plaintiffs have not cited any authority from Arkansas, Virginia, Montana or Puerto Rico holding that an indirect purchaser plaintiff may bring an unjust enrichment claim when that same claim

15

would be barred under state antitrust law. In the absence of such authority, the Court declines to recognize such a claim because the Court agrees with defendants that permitting such claims would allow plaintiffs to circumvent limitations of state antitrust laws.

### E. Unjust enrichment– Tennessee and Florida[7]

Defendants argue that plaintiffs' unjust enrichment claims under Tennessee law must be dismissed because plaintiffs have not alleged that they first exhausted their administrative remedies. Under Tennessee law, a plaintiff must demonstrate that he or she has exhausted "all remedies against the person with whom the plaintiff enjoyed privity of contract." *Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W. 3d 512, 525 (Tenn. 2005). However, "to maintain an action for unjust enrichment, a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile." *Id.* at 526.

Plaintiffs respond that futility is self-evident in these circumstances where the alleged price-fixing was done by the defendants in the manufacture of LCD panels and LCD products, and there has been no allegation that the resellers were involved in the conspiracy. The Court agrees that under the facts alleged in the complaint, futility is evident. Accordingly, the Court DENIES defendants' motion to dismiss the Tennessee claim.

///

---

[7] As previously indicated, plaintiffs have agreed to dismiss their Florida unjust enrichment claims. Therefore, the Court need not address the issue of exhaustion of remedies as to Florida law.

**CONCLUSION**

For the foregoing reasons, the Court hereby DENIES defendants' motions to dismiss the direct purchaser plaintiffs' first amended complaint, and GRANTS IN PART AND DENIES IN PART defendants' motions to dismiss the indirect purchaser plaintiffs' second amended complaint. (Docket Nos. 769, 771, 777, 778, 779, 782). The Court GRANTS the direct purchaser plaintiffs' motion to amend the complaint, and VACATES the March 6, 2009 hearing scheduled for that motion. (Docket No. 806). The direct purchaser plaintiffs shall file the amended complaint by **March 13, 2009**.

**IT IS SO ORDERED.**

Dated: March 3, 2009

SUSAN ILLSTON
United States District Judge