IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION _____/ | No. M 07-1827 SI<br><br>MDL. No. 1827 |
| This Order Relates to:<br><br>ALL CASES<br>_____/ | **ORDER GRANTING AUOA'S MOTION FOR AN ORDER REQUIRING RETURN OF INADVERTENTLY PRODUCED PRIVILEGED DOCUMENT** |

On August 21 and September 9, 2009, the Court held hearings on AUOA's motion for an order requiring the return of an inadvertently produced privileged document. For the reasons set forth below, the Court GRANTS the motion.

**DISCUSSION**

AU Optronics Corporation America ("AUOA") has filed a motion for an order requiring the United States Department of Justice to return an inadvertently produced privileged document, and to destroy all copies of the document in the Department of Justice's possession. The document at issue consists of two pages of typewritten notes made by an AUOA employee, Evan Huang, on his laptop computer at 5:31 a.m. on December 11, 2006. The notes contain Mr. Huang's recollection of the FBI's December 7, 2006 interview of Mr. Huang; the interview was conducted in connection with the FBI's investigation into allegations that AUOA conspired to fix prices of TFT-LCD panels.

AUOA contends that the document is protected by the attorney-client privilege because Mr. Huang prepared the notes upon instruction of counsel, and in order to facilitate communication between

Mr. Huang and AUOA's counsel during a meeting that occurred on the afternoon of December 11, 2006. Mr. Huang has filed a declaration stating,

> Following the interview with the FBI, I was told by either my supervisor, Michael Wong, or AUOA's attorney, Linh Ha, that AUOA's attorneys wanted to meet with me. I was told that the attorneys wanted me to summarize my interview with the FBI agent with comments about the questions, my answers, and any updated information. I am not sure which person told me to write the summary but I know it was for the attorneys I was going to meet.
>
> On December 11, 2006 in the early morning, I wrote the summary about my FBI interview on my laptop computer. When I wrote the summary, I did not know or anticipate that anyone other than AUOA's attorneys would see the document or its contents. I knew I would be meeting later that day with AUOA's attorneys. I wrote the summary to help me remember things I wanted to discuss with the attorneys including things I remembered since the date of my FBI interview.

Huang Decl. ¶¶ 5-6. AUOA has also filed the declaration of Christopher Nedeau, AUOA's attorney. Mr. Nedeau states that on December 7, 2006, the same day that the FBI interviewed Mr. Huang and other AUOA employees and the same day that AUOA was served with a grand jury subpoena, AUOA retained Mr. Nedeau to represent the company in connection with the criminal and antitrust investigation by the U.S. Department of Justice, and in all related civil matters. Nedeau Decl. ¶ 4. Mr. Nedeau states,

> I advised the Company that I must interview all Company employees who had given statements to the FBI. To facilitate the communications that I would have – in my capacity as the Company's attorney – with FBI-interviewed Company employees, I instructed the Company to have the employees who had been interviewed by the FBI write down their recollection of those interviews and/or communicate directly with outside counsel.

*Id.* ¶ 5. On the afternoon of December 11, 2006, Mr. Nedeau and two other attorneys met with Mr. Huang to discuss the FBI interview, and during that meeting Mr. Huang opened his laptop computer and consulted his electronic notes. *Id.* ¶ 7. Following this meeting, AUOA attorney Linh Ha asked Mr. Huang for his laptop, and Mr. Huang complied with the request. Huang Decl. ¶ 7. On September 21, 2007, AUOA produced Mr. Huang's hard drive, which contained the notes, to DOJ in response to the grand jury subpoena.

Although it is a close question, the Court concludes that Mr. Huang's notes are protected by the attorney-client privilege. Based upon the declaration of Mr. Huang, the Court is satisfied that AUOA has shown that Mr. Huang created the notes of the FBI interview upon the instruction of counsel, and in order to facilitate his communication with AUOA's attorneys at the December 11, 2006 meeting.

2

DOJ objects that Mr. Huang's declaration is ambiguous because Mr. Huang does not state specifically *who* gave him the instruction to create the notes of the interview. However, while Mr. Huang cannot remember whether his supervisor or an AUOA attorney (or someone else) gave him the instruction, Mr. Huang does state that "I was told that the attorneys wanted me to summarize my interview with the FBI agent," and that "I wrote the summary to help me remember things I wanted to discuss with the attorneys . . . ." Huang Decl. ¶¶ 5, 6. Thus, the record shows that Mr. Huang created the document in response to an instruction from counsel, and in order to facilitate his communication with counsel. This is sufficient to establish the privilege. *See United States v. DeFonte*, 441 F.3d 92, 96 (2d Cir. 2006) (per curiam) ("Certainly, an outline of what a client wishes to discuss with counsel – and which is subsequently discussed with one's counsel – would seem to fit squarely within our understanding of the privilege."); *Larson v. Harrington*, 11 F. Supp. 2d 1198, 1203 (C.D. Cal. 1998) (notes created at direction of counsel are protected, while notes created on client's own initiative "are not within the attorney-client privilege because although they came into counsel's possession they were not made as communications from client to attorney"); *see also Clark v. Buffalo Wire Works Co.*, 190 F.R.D. 93, 96 (W.D.N.Y. 1999) (notes made for purpose of seeking legal advice from an attorney were protected).

DOJ and plaintiffs contend that even if the notes are privileged, AUOA waived the privilege because the company did not take reasonable steps to prevent disclosure. Again, this is a close question, as there were certainly additional measures that could have been taken in the review and production of AUOA's documents that would have prevented the inadvertent disclosure of Mr. Huang's notes. However, the Court has reviewed the declarations of Mr. Nedeau and Mr. Healy, and finds that AUOA's former counsel, the Sedgwick firm, took reasonable steps at the time to prevent disclosure of privileged documents, and that AUOA acted promptly and reasonably to rectify the inadvertent production. *See* Fed. R. Evid. 502(b).

Accordingly, the Court GRANTS AUOA's motion and orders DOJ to return the inadvertently produced privileged document to AUOA, and to destroy all copies of the document that are in DOJ's possession. While the document is privileged, the facts contained in the document are not, and plaintiffs and the government are free to inquire about those facts through discovery. In addition, the Court makes no finding regarding, and this order does not address, any collateral consequences of AUOA's

inadvertent disclosure. The notes were produced to DOJ over 22 months ago, and DOJ has relied on the document in developing the government's theory of its investigation, in preparation for witness interviews, in identifying Mr. Huang as a target of the DOJ's investigation, and in building an obstruction of justice case against Mr. Huang. *See* Lynch Decl. ¶ 13. The government's reliance on this document was reasonable, as there is nothing on the face of the document to suggest that it is privileged. At the September 9, 2009 hearing on the matter, AUOA's counsel asserted that the DOJ should be precluded from using any attorney work product that resulted from Mr. Huang's notes. However, neither AUOA's Notice of Motion nor the memorandum in support thereof requested such relief, and AUOA has not cited any authority in support of such broad collateral consequences.[1]

**CONCLUSION**

For the foregoing reasons, the Court GRANTS AUOA's motion and orders the Department of Justice to return the inadvertently produced document and destroy all copies of the document in DOJ's possession. (Docket No. 1147).

**IT IS SO ORDERED.**

Dated: September 10, 2009

SUSAN ILLSTON
United States District Judge

---

[1] Indeed, as the DOJ's counsel argued at the hearing, if the government was required to destroy all work product that relies on the inadvertently produced document, parties would have a perverse incentive to "inadvertently" produce a "Trojan horse" document revealing criminal or potentially criminal conduct, only to later reclaim the document as privileged and effectively obtain immunity from prosecution.

4